

SUPPRESSED
FILED
JUN - 2 2021
U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) )   4:21CR00347 JAR/NCC |
| BRETTON DELARIA, | ) ) |
| Defendant. | ) ) ) ) |

### INDICTMENT

The Grand Jury charges that:

### COUNTS I-V
### WIRE FRAUD: 18 U.S.C. § 1343

### INTRODUCTION

1.  The Missouri Alliance of Concurrent Enrollment Partnerships ("MoACEP") is an organization located in Missouri, utilized by colleges and universities to help facilitate programs and future attendance.

2.  MoACEP shares ideas and information regarding concurrent high school and college enrollment. Concurrent enrollment is completely student funded and has no state or federal funding mechanism.

3.  At all times relevant to the Indictment, US Bank and Wells Fargo were all federally insured financial institutions within the meaning of Title 18, U.S.C. § 20.

4.  At all times relevant to the Indictment, MoACEP maintained bank account ************9197 at US Bank.

5. At all times relevant to the Indictment, defendant **BRETTON DELARIA** ("DeLaria") maintained personal bank account **** **** **** 4093, at US Bank.

6. At all times relevant to the Indictment, defendant **BRETTON DELARIA** ("DeLaria") also maintained personal bank account **** **** **** 4580 at US Bank, in the name of Designs by Delaria, LLC.

7. At all times relevant to the Indictment, a local university described herein maintained bank account ****-**8967 at Wells Fargo.

8. In 2016, DeLaria was employed as the Director of the 1818 Advanced College Credit Program at a local university. The role of the 1818 Director is primarily outreach to future students and to facilitate enrollment in the program. Additionally, DeLaria was the Treasurer for MoACEP from its inception in 2016 up until approximately June of 2020.

9. Beginning in April 2019, DeLaria created and submitted fraudulent, fictitious invoices, purportedly from MoACEP, to the local university where he was employed as 1818 Director. By submitting the fraudulent MoACEP invoices, DeLaria caused payments to be made by the local university to MoACEP and other fictitious accounts created by DeLaria. DeLaria then caused the funds to be transferred from the MoACEP bank account into accounts he personally held and controlled. DeLaria then used the fraudulently obtained local university funds for personal purposes, all without the knowledge or authorization of either the local university or MoACEP.

10. These fraudulent invoice payments took several forms:
    a. Direct Payment Voucher (DPV) payments, which are internal invoices utilizing the local university network.

    b.    DeLaria also created a fictitious Paypal account for MoACEP. DeLaria caused fraudulent MoACEP invoices to be paid by the local university to the fictitious MoACEP Paypal account.

    c.    DeLaria also created a fictitious Paypal account for Travitor, another company that would be invoicing the local university. DeLaria caused fraudulent Travitor invoices to be paid by the local university to the fictitious Travitor Paypal account.

11.    The falsified invoices were also paid using DeLaria's university credit card, American Express \*\*\*\*-\*\*\*\*\*\*-41004.

12.    DeLaria charged approximately $75,405 to his university credit card in fictitious invoices from his fictitious PayPal accounts.

13.    Delaria would initiate a payment request from one of the fictitious PayPal accounts to his university credit card. DeLaria's university credit card would then be used to pay his own fictitious PayPal accounts.

14.    DeLaria's employment with the local university was terminated in June 2020.

## THE SCHEME

15.    From on or about April 2019 to on or about June 2020, defendant **BRETTON DeLARIA** devised and intended to devise a scheme to defraud a local university, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

## MANNER AND MEANS

16.    It was part of the scheme that during the relevant time period, DeLaria knowingly

solicited fraudulent payments from a local university by submitting false invoices purportedly on behalf of MoACEP.

17. It was part of the scheme that, in truth and in fact, as DeLaria well knew, MoACEP had not provided the local university with the services identified in the fraudulent invoices submitted by DeLaria.

18. It was part of the scheme that, after the local university transferred funds to MoACEP in payment of the fictitious invoices, defendant DeLaria knowingly withdrew funds from the MoACEP account for his personal use.

19. It was part of the scheme that DeLaria created a fictitious MoACEP business account at PayPal account ****-56757, to which the fraudulent funds would be transferred and later used by DeLaria for personal use.

20. It was part of the scheme that DeLaria created a fictitious MoACEP business account at PayPal account ****-09488, to which the fraudulent funds would be transferred and later used by DeLaria for personal use.

21. It was part of the scheme that DeLaria created a fictitious Travitor Media business account at PayPal account ****-49139, to which the fraudulent funds would be transferred and later used by DeLaria for personal use.

22. It was further part of the scheme that in execution of the above-described scheme to defraud, DeLaria caused the following payments to be made by means of wire transmission in interstate commerce:

    a. On April 26, 2019, DeLaria caused a $15,000 payment to be made from the local university Wells Fargo account ****-**8967 to DeLaria's US

        Bank account **** **** **** 4093.

    b.    On May 24, 2019, DeLaria caused a $16,050 payment to be made from the local university Wells Fargo account ****-**8967 to DeLaria's US Bank business account **** **** **** 4580.

    c.    On May 14, 2020, DeLaria caused a $183,365.50 automated clearing house ("ACH") payment to be made from the local university Wells Fargo bank account ****-**8967 to DeLaria's US Bank business account **** **** **** 4580.

    d.    On July 5, 2019, DeLaria caused a $3,000 payment to be made from his university American Express credit card ****-******-41004 to DeLaria's PayPal account ****-49139.

    e.    On July 24, 2019, defendant DeLaria caused a $3,000 payment to be made from his university American Express credit card ****-******-41004 to DeLaria's PayPal account ****-09488.

23.    It was further part of the scheme that, in truth and in fact, none of these above-referenced payments corresponded to legitimate educational expenses or transactions performed by MoACEP.

24.    On or about each of the dates set forth below, in the Eastern District of Missouri, the defendant,

**BRETTON DELARIA**

for the purpose of executing the scheme described above, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below for each

5

count, each transmission constituting a separate count:

| COUNT | DATE | WIRE TRANSACTION |
|---|---|---|
| I | April 26, 2019 | Deposit of Check Number A0809852 in the amount of $15,000 into Delaria's US Bank account **** **** **** 4093 |
| II | May 24, 2019 | Deposit of Check Number A0812482 in the amount of $16,050 into Delaria's US Bank account **** **** **** 4580 |
| III | May 14, 2020 | $183,365.50 ACH direct deposit to DeLaria's US Bank account **** **** **** 4580 |
| IV | July 5, 2019 | $3,000 credit card payment to DeLaria's PayPal account ****-49139. |
| V | July 24, 2019 | $3,000 credit card payment to DeLaria's PayPal account ****-09488. |

All in violation of, and punishable under, Title 18, United States Code, Section 1343.

## FORFEITURE ALLEGATION

The Grand Jury further finds by probable cause that:

1. Pursuant to Title 18, United States Code, Sections 981(a) and Title 28, United States Code, Section 2461(c), upon conviction of an offense in violation of Title 18, United States Code, Section 1343 as set forth in Count(s) I-V, the defendant shall forfeit to the United States of America any property, real or personal, constituting or derived from any proceeds traceable to such violations.

2. Subject to forfeiture is a sum of money equal to the total value of any property, real or personal, constituting or derived from any proceeds traceable to said violations, the amount of which is at least $518,000.

3. Specific property subject to forfeiture includes, but is not limited to, the following:

      a. Real Property known as 3222 Ohio Ave;

4. If any of the property described above, as a result of any act or omission of the defendant:

      a. cannot be located upon the exercise of due diligence;

      b. has been transferred or sold to, or deposited with, a third party;

      c. has been placed beyond the jurisdiction of the court;

      d. has been substantially diminished in value; or

      e. has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

A TRUE BILL.

_____

FOREPERSON

SAYLER A. FLEMING
United States Attorney

_____

Edward Dowd III #61909(MO)
Assistant United States Attorney